# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SANDRA VALLES**,

        Plaintiff,

    vs.                           No. **CIV. 03-1324 MCA/RHS**

**THE CITY OF HOBBS,**
a New Mexico Municipal Corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Summary Judgment* [Doc. No. 15] filed on October 13, 2004, and *Defendant's Motion to Strike Claims for Damages for Emotional and Mental Distress as a Result of Plaintiff's Failure to Comply with D.N.M.LR-Civ. 26.3(d)* [Doc. No. 12] filed on September 24, 2004. Plaintiff has failed to file any response to the summary-judgment motion. Having considered the submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's motion for summary judgment and denies as moot Defendant's motion to strike for the reasons set forth below.

## I.  BACKGROUND

Plaintiff Sandra Valles is a former employee of the Hobbs Police Department in Hobbs, New Mexico, having worked for the department as a police officer from June 1999 until May 2003. [Doc. No. 16, at 5, 8.] On November 17, 2003, Plaintiff filed this civil action against Defendant City of Hobbs alleging a violation of the Equal Pay Act, 29 U.S.C.

§ 206(d)(1), and sexual harassment in the form of a hostile work environment contrary to Title VII of the Civil Rights Act, 42 U.S.C. § 2002e-2(a)(1), and the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 to -15 (Michie 2004).  [Doc. No. 1.]  According to Plaintiff's *Complaint*, she was "subjected to continued sexual harassment by various members of the PD, all of which severely adversely affected her work environment and her ability to properly perform her job[, and] was subjected to a differing wage payment from males solely because she was female."  [Id. at 2-3.]

On October 13, 2004, Defendant moved for summary judgment on each of the claims asserted in Plaintiff's *Complaint*.  [Doc. No. 15.]  Plaintiff has not filed a timely response to Defendant's motion, nor does the record reflect any request for leave to extend the time for such filing.  [Doc. No. 9.]

The undisputed facts and evidence of record set forth in conjunction with Defendant's summary-judgment motion can be summarized as follows.  Plaintiff's claim of sexual harassment in the form of a hostile work environment rests on her deposition testimony regarding the following eight incidents which allegedly occurred during her four-year tenure as a City police officer [Doc. No. 16, § I, at ¶¶ 2-11]:

(1)   In 2000, Plaintiff was scheduled to go on an out-of-town recruiting trip with a male sergeant, and she learned that the sergeant had reserved a hotel suite with two bedrooms [Valles Dep. at 38-39, 160];

(2)   In 2001, Plaintiff heard Officer Mike Dunlap tell another officer that he had engaged in anal intercourse.  Plaintiff responded to such remarks by telling Officer

Dunlap that he was "being a slut" or that he was "nasty" [Valles Dep. at 134, 163];

(3)     In 2001, one of the department's male sergeants and Lieutenant Matt Rhoads discussed the fact that a female witness was wearing no underpants, making sure that Plaintiff overheard their discussion [Valles Dep. at 163-64];

(4)     In 2002, Officer Dunlap, in Plaintiff's presence, told others of his preference that a woman shave her genital area and asked Plaintiff, "How are you?" Again, Plaintiff's response to such remarks was to tell Officer Dunlap that he was "nasty" [Valles Dep. at 134-35];

(5)     After a female captain sat in a chair, an unidentified male co-worker went over to the chair to smell it [Valles Dep. at 136];

(6)     In 2002, in Plaintiff's presence, Officer Carlos Hernandez pulled down the pants of Officer Derrick Lassater as a prank, and Plaintiff turned her head away from the scene [Valles Dep. at 160-62];

(7)     When Plaintiff was pregnant and asked to be assigned a desk position, Lieutenant Rhoads told her that she had done her time on the street and was entitled to be pregnant. Her transfer to a desk position was approved [Valles Dep. at 142]; and

(8)     At a staff meeting, the City's police chief commented that, "If you're not getting complained on, you're not doing your job." When Plaintiff replied that some officers were doing their jobs without complaint, the chief responded by asking Plaintiff, "Well, are you doing anything?" [Valles Dep. at 43-44.]

Defendant has a sexual harassment policy which directs employees to report sexual

harassment complaints to the Personnel Director immediately. Plaintiff was informed of this policy when she began her employment with the City in June 1999. Nevertheless, Plaintiff did not complain to her sergeant about any of the above incidents except for the police chief's question about whether she was "doing anything." [Doc. No. 16, § I, at ¶¶ 12-16, Ex. C; Valles Dep. at 89, 108-09.] Plaintiff also did not mention anything about sexual harassment in her letter of resignation, which she submitted on April 17, 2003. [Doc. No. 16, § 1, at ¶ 22, Ex. D.] It was not until after she submitted her letter of resignation in 2003 that she complained to Shelly Rachal in the personnel office regarding the incident in 2000 where Sergeant Herrera had reserved a two-bedroom hotel suite. [Id. ¶ 25; Valles Dep. at 38-39, 110.]

Plaintiff's claim under the Equal Pay Act rests on her deposition testimony regarding Defendant's delay in providing her with a requested pay increase after her supervisor had approved it. The pay increase was issued pursuant to a city policy that provides extra compensation to officers who obtain certain educational credits. Although Plaintiff contends that Officers Dunlap, Lassater, Hernandez, and Kathleen Rix and one police sergeant all received their pay increases within three weeks of submitting their requests, Plaintiff's receipt of her increase was delayed for approximately three months because of a mistake in processing her paperwork. This delay was caused by the City's personnel office, which misunderstood her paperwork as a request for taking classes instead of a request for an increase in pay. Plaintiff brought this mistake to the attention of Shelly Rachal in the personnel office. The mistake was corrected, and Plaintiff received her pay increase

retroactively.  [Doc. No. 16, § 1, at ¶¶ 17-21, 25, 27; Valles Dep. at 40, 79-81, 103-05, 139-40.]

Although Plaintiff had already stated her intention to resign based on her spouse's transfer to another state on April 17, 2003, she later claimed that there were other reasons that prompted her to leave, or at least to move up the effective date of her resignation.  In particular, she was dissatisfied with "verbal counseling" that she was required to undergo on May 2, 2003, in response to a citizen complaint relating to her decision to handcuff an individual and place him in the back of her police car while she was on duty.  Although Plaintiff's communicated her dissatisfaction with this verbal counseling to Shelly Rachal in the personnel office at approximately the same time that she complained about the delay in her pay increase and the hotel-reservation incident, the evidence of record does not explain, and Plaintiff does not demonstrate, how the verbal counseling or the citizen complaint from which it arose are causally related to her sexual-harassment complaint.  [Doc. No. 16, § I, at ¶¶ 22-25; Valles Dep. at 30, 38-39, 98-102, 110-11.]

On May 7, 2003, Plaintiff filed a Charge of Discrimination with the New Mexico Human Rights Division and the EEOC.  [Doc. No. 16, § I, at ¶ 26, Ex. E.]  In her charge, Plaintiff complained generally of "sexist comments and treatment" and the denial of her pay increase, but explained that "[m]y complaint is prompted by an unfair written disciplinary action on May 1, 2003 for handcuffing a subject, and that my male counterparts do on a daily basis because it is a common procedure."  [Id.].

## II.  <u>ANALYSIS</u>

### A.  <u>Standard of Review</u>

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  <u>See</u> <u>id.</u> at 248.  Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324; <u>Wright-Simmons v. City of Okla. City</u>, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  <u>Murray v. City of Sapulpa</u>, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay

6

testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions); Lozano v. Ashcroft, 258 F.3d 1160, 1166 (10th Cir. 2001) (refusing to consider declaration that was based on hearsay rather than personal knowledge and did not attach copies of records referenced therein).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

When, as here, the non-movant does not file a timely response to a dispositive pretrial motion, the Court may not rely on this fact alone, without further analysis, as the grounds for granting summary judgment in the movant's favor.  See Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002).  In order to reach such a result under this scenario, the Court must either perform the sanctions analysis outlined in Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988), or "make the determination that judgment for the moving party is 'appropriate' under Rule 56."  Reed, 312 F.3d at 1195.  In this case, the Court relies on the procedure set forth in Fed. R. Civ. P. 56, rather than the Meade sanctions analysis, except to note that Plaintiff

7

has failed to comply with the time limits set forth in the *Initial Pretrial Report* [Doc. No. 9] and D.N.M. LR-Civ. 7.6(a), or set forth good cause on the record why she cannot do so. The Court does ***not*** construe Plaintiff's failure to respond in this manner as an indication of her consent to grant the motion under D.N.M. LR-Civ. P. 7.1(b).

In applying the procedure set forth in Fed. R. Civ. P. 56, however, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)).  Application of D.N.M. LR-Civ. P. 56.1 is consistent with the Tenth Circuit's holding in Reed, 312 F.3d at 1195, which specifically instructs that the "court should accept as true all material facts asserted and properly supported in the summary judgment motion" under these circumstances.

The Tenth Circuit  also has observed that in an employment discrimination case, "the requirement that the nonmovant specifically reference facts in its motion materials and the record is of special importance."  Adler, 144 F.3d at 672.  Thus, "the nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) and Celotex or explain why it cannot pursuant to Rule 56(f).  Otherwise,  the nonmovant acts, or fails to act, at its peril."  Id. (citation omitted).

**B.**   **Plaintiff's Hostile Work Environment Claim Under Title VII**

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2002e-2(a)(1).  This language has been construed to impose a prohibition on sexual harassment in the workplace.  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  Sexual harassment may occur in at least two forms:  *quid pro quo* harassment, and the creation of a hostile work environment.

While Plaintiff's EEOC charge and some of the excerpts of her deposition testimony attached to Defendant's motion papers contain some vague allegations about the manipulation of test results relating to promotional exams, she has failed to make an adequate showing of *quid pro quo* harassment in this case.   "Absent the possibility that job benefits were conditioned 'on an employee's submission to conduct of a sexual nature' and that 'adverse job consequences result from the employee's refusal to submit to the conduct,' there can be no legitimate claim of quid pro quo sexual harassment."  Wilson v. Muckala, 303 F.3d 1207, 1221 (10th Cir. 2002) (quoting Hicks v. Gates Rubber Co., 833 F.2d 1406, 1414 (10th Cir. 1987)).  Here the undisputed facts and evidence of record do not support a reasonable inference that any specific promotional opportunities were conditioned on Plaintiff's submission to conduct of a sexual nature.  Accordingly, the focus of the Court's analysis is on Plaintiff's claim that she was subjected to a hostile work environment.

Not every instance of bothersome or inappropriate behavior with a sexual connotation

9

is deemed to create a hostile work environment that violates Title VII. The standards developed by the Supreme Court for determining whether such an environment exists are not intended to become a "'general civility code'" encompassing the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Further, "the statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). Because Title VII prohibits only discrimination "because of" sex, "[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris, 510 U.S. at 372 (Ginsburg, J., concurring).

In order to distinguish innocuous and ordinary tribulations of the workplace from the type of discriminatory conditions of employment that are actionable under Title VII, the Supreme Court has developed a two-part test. See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1366 (10th Cir. 1997). To pass the first part of this test, the conduct at issue must be "'severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive.'" Oncale, 523 U.S. at 81 (quoting Harris, 510 U.S. at 21). Under the second part of the test, the conduct at issue must be "one that the victim in fact did perceive to be" hostile or abusive. Faragher, 524 U.S. at 787.

"[T]he objective severity of the harassment should be judged from the perspective of

a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Oncale, 523 U.S. at 81 (quoting Harris, 510 U.S. at 23). Careful consideration must be given to "the social context in which particular behavior occurs and is experienced by its target." Id. While "no single factor is required," courts and juries may take into account "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; accord Faragher, 524 U.S. at 787. The "effect on the employee's psychological well-being" also may be a relevant factor, although a plaintiff is not required to prove that she suffered injury or that her psychological well-being was seriously affected in order to prevail on a Title VII claim alleging a hostile or abusive work environment. Harris, 510 U.S. at 22-23.

If an employee's work environment is found to be hostile and abusive under these standards, then the Court must make further inquiries to determine whether the employer is subject to liability for the hostile work environment. "An employer may be liable directly or vicariously. An employer is directly liable for a hostile work environment created by any employee if the employer's negligence causes the actionable work environment." Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999). "An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759 (1998).

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively

11

higher) authority over the employee" unless the employer proves the following necessary elements of an affirmative defense by a preponderance of the evidence:  "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 765.  An employer also may be subject to vicarious liability under this standard "when the harassing employee has apparent authority" over the victimized employee.  Wilson, 303 F.3d at 1220.

In this case, Defendant moves for summary judgment on the grounds that Plaintiff has failed to demonstrate the existence of a hostile work environment and that Defendant is not vicariously liable for the actions of her supervisors and co-workers under the circumstances alleged here.   Based on the undisputed facts and evidence of record, I conclude that Defendant has met its burden of showing that it is entitled to summary judgment on Plaintiff's Title VII claim under Fed. R. Civ. P. 56.  See Celotex Corp., 477 U.S. at 322-23; Adler, 144 F.3d at 670-71.

The undisputed facts and evidence of record do not support a reasonable inference that Plaintiff can establish a *prima facie* case of sexual harassment in the form of a hostile work environment.  While the frequency of the alleged conduct is but one of several factors to be considered in making this determination, in this case the eight alleged incidents identified over the course of Plaintiff's approximately four-year term of employment with the City's Police Department do not add up to a workplace "'permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" Riske v. King Soopers, 366 F.3d 1085, 1091 (10th Cir. 2004) (*quoting* Harris, 510 U.S. at 21). These incidents "were too few and far between" to be considered sufficiently severe or pervasive enough to meet this test when viewed in the context of the other factors discussed below. Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998).

Plaintiff also has not made an adequate showing that all eight of the alleged incidents were reasonably understood as involving gender-based remarks or conduct. For example, the Police Chief's rhetorical question at the staff meeting about whether Plaintiff was "doing anything" was made in response to her statement which challenged or contradicted the Police Chief's earlier remarks. [Valles Dep. at 43-44.] Considered in context, this statement is not gender-related. It simply presents a situation in which Plaintiff and the Police Chief were at odds with one another.

"Title VII . . . does not give a woman immunity from being reprimanded in the presence of her co-workers if her supervisor believes that she has violated work rules or has been negligent in performing her job." Gross, 53 F.3d at 1545-46. A plaintiff cannot survive a summary-judgment motion simply by alleging that her supervisor's decisions in this regard were wrong or mistaken. See Pamintuan v. Nanticoke Mem. Hosp., 192 F.3d 378, 387 (3d Cir. 1999). The loss of prestige or authority that Plaintiff may have felt as a result of the Police Chief's remarks at the staff meeting, or the verbal counseling she received in response to the citizen complaint, fall into the category of "monitoring and job stress typical of life in

the real world" and is not actionable under Title VII as a hostile work environment. <u>Trujillo</u> <u>v. Univ. of Colo. Health Sciences Ctr.</u>, 157 F.3d 1211, 1214 (10th Cir. 1998).

Further, not all of the gender-based remarks or incidents at issue here can be considered objectively hostile to, or offensive toward, Plaintiff. For example, Lieutenant Rhoads obviously invoked Plaintiff's gender when he made his comment to the effect that Plaintiff had done her time on the street and therefore was entitled to be pregnant. [Valles Dep. at 142.] When considered in context, however, this remark is not reasonably construed as being objectively hostile or offensive. The remark was made in the context of approving *Plaintiff's request* to be reassigned to a different division of the Police Department during her pregnancy. The Lieutenant's remark could reasonably be construed as acknowledging her pregnancy and the need to adjust or improve her working environment. The medical conditions and work adjustments occasioned by pregnancy constitute "genuine but innocuous differences" between the sexes. <u>See</u> <u>Oncale</u>, 523 U.S. at 81. The Lieutenant's reference to doing time "on the street" referred to Plaintiff's prior work as a police officer and, in this context, cannot reasonably be viewed as derogatory.

Some of the other alleged incidents do suggest that there were times when Plaintiff worked in an unpleasant environment where certain of her male co-workers engaged in crude, distasteful, and unacceptable behavior. Regardless of their gender, employees should not be subjected to pranks in which their clothing is pulled down, nor should they be put in a position of witnessing other employees being subjected to such pranks. Similarly, it is entirely unprofessional for police officers to engage in chair "sniffing," voyeurism, or sexual

14

banter concerning a witness's lack of undergarments, regardless of the gender of the parties involved.  Even if Plaintiff was not directly targeted, and even if Plaintiff was not singled out because of her gender in these incidents, they "are nevertheless  relevant to [her] claims of a hostile work environment" because they formed part of her "general work atmosphere" and have "gender-related implications."  Penry, 155 F.3d at 1262-63.

Perhaps the most troubling of the alleged incidents concern the remarks attributed to Officer Dunlap regarding his experience with anal intercourse and his preference for women who shave their genital area.   These remarks are gender-related and may evince hostility or sexual innuendo directed specifically at Plaintiff, particularly when the other officer asked, "How are you?" after describing his own sexual preferences in excessive detail.

Plaintiff responded to these remarks by telling Officer Dunlap that "you're nasty" and "you're being a slut." [Valles Dep. at 134-35, 163.]  She also admits that she, too, "cussed" and said "bad words" while on the job. [Id. at 136-37.]  Plaintiff did not tell Officer Dunlap to stop talking that way, nor did she invoke the City's sexual harassment policy within a reasonable time after his remarks were made.   Plaintiff's responses to the alleged incidents are relevant to the Court's inquiry because Defendant's liability does not depend solely on the existence of hostile or offensive behavior in the workplace; it also depends on how the employer and the victim responded to it.  See Ellerth, 524 U.S. at 765.

Considering the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance," Harris, 510 U.S. at 23, I conclude that Plaintiff has failed to make an adequate showing concerning each essential element required to establish a *prima facie* case of sexual harassment in the form of a hostile work environment.   As in Penry, 155 F.3d at 1263, "[t]he gender-based incidents were spread out over a period of more than three years and are insufficient to establish a discriminatorily hostile environment."

I also conclude that Defendant is not liable for any sexual harassment arising from the incidents alleged here because "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765.  While the mere existence of a written policy against sexual harassment is not alone dispositive, see Adler, 144 F.3d at 676, under the circumstances presented here Plaintiff has not shown how her employer could reasonably be expected to know about sexual harassment or other inappropriate behavior when the employee who finds the behavior to be hostile or offensive fails to object or report it in a timely manner, and the conduct does not occur with sufficient frequency or severity to make it common knowledge among the management.  See Ford v. West, 222 F.3d 767, 776 (10th Cir. 2000); Hall v. Bodine Elec. Co., 276  F.3d 345, 357 (7th Cir. 2002); Wyatt v. Hunt Plywood Co., 297 F.3d 405, 413 (5th Cir. 2002).

In this case, Plaintiff was aware of the City's sexual harassment policy but did not invoke this policy or complain to a supervisor with the requisite authority within a reasonable time after hearing the allegedly offensive gender-based remarks of other officers.  Similarly,

Plaintiff did not report her concerns regarding the incident involving the hotel-room reservation in a timely manner, and in any event that situation appears to have been corrected before the trip occurred as Plaintiff made no further complaints about the trip.

Plaintiff's explanation for the delay in reporting the alleged harassment is that she did not want to be "labeled" like other female employees who had filed charges with the EEOC. Courts have held that such generalized fears of retaliation, confrontation, unpleasantness, or other repercussions do not excuse a failure to report sexual harassment.  See Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1026 (10th Cir. 2001) (collecting cases).  Accordingly, Plaintiff's failure to object to or report the sexual harassment in a timely manner provides an alternative basis on which to grant summary judgment in Defendant's favor on Plaintiff's Title VII claim.  I reach this conclusion based on the framework set forth in Ellerth, 524 U.S. at 765, and do not rely on any defense arising from the statutory time period for filing EEOC charges, see Boyer v. Cordant Technologies, Inc., 316 F.3d 1137, 1140 (10th Cir. 2003).

## C.   Plaintiff's Claim Under the Equal Pay Act

Defendant also moves for summary judgment on the grounds that Plaintiff is unable to establish a *prima facie* case with respect to her claim under the Equal Pay Act.  [Doc. 15]. To establish a prima facie case under the Equal Pay Act, 29 U.S.C. § 206(d)(1), ("EPA") a plaintiff must show that:  (1) she was performing work that was substantially equal to that of male coworkers, with "equality" being measured on the basis of the skills, duties, supervision, effort, and responsibilities of the jobs;  (2) the conditions where the work was performed were essentially the same;  and (3) the male employees were paid more.  Sprague,

129 F.3d at 1364.  "If a prima facie case is so established under the EPA the defendant must undertake the burden of persuading the jury that there existed reasons for the wage disparity which are described in the [EPA]."  Tidwell v. Fort Howard Corp., 989 F.2d 406, 409 (10th Cir.1993).  These reasons are:  (1) a seniority system;  (2) a merit system;  (3) a pay system based on quantity or quality of output;  (4) a  disparity based on any factor other than sex. Id.

Assuming for purposes of argument that the conclusory statements in Plaintiff's deposition testimony are sufficient to establish that she was performing substantially equal work and that the conditions where the work was performed were essentially the same, Plaintiff still falls short of establishing a *prima facie* case under the EPA because the evidence of record does not support a reasonable inference that male employees performing substantially equal work under essentially the same conditions were paid more.  Rather, the undisputed facts and evidence of record show that Plaintiff ultimately received the same requested pay increase as the other employees with whom she compared herself.  In addition, Defendant has presented undisputed facts which show that any disparity attributable to the delay in Plaintiff's receipt of the pay increase was based on a factor other than sex, *i.e.*, the delay in processing the paperwork by the City's personnel office after the request had already been approved by the Police Chief.  For these reasons, Defendant is entitled to summary judgment on Plaintiff's EPA claim.

### D.    <u>Plaintiff's State Law Claims</u>

In addition to the federal claims discussed above, Plaintiff asserts that her allegations of sexual harassment support a claim under the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 to -15, or New Mexico's common law of torts.  As Plaintiff's jurisdictional allegations do not include diversity of citizenship or amount in controversy, such state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Before doing so, however, the Court must consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction over the state-law claims.  See <u>Anglemyer v. Hamilton County Hosp.</u>, 58 F.3d 533, 541 (10th Cir. 1995).  In this case, the Court concludes that these factors weigh in favor of retaining jurisdiction because Plaintiff's state-law claims are so closely intertwined with her federal claim under Title VII of the Civil Rights Act that the disposition of the state-law claims follows to a significant degree from the Court's analysis of the latter claim.  Hence, the Court elects to exercise supplemental jurisdiction over Plaintiff's state-law claims and resolve all of the claims addressed in Defendants' motion in this *Memorandum Opinion and Order*.

The New Mexico Supreme Court has looked to federal law interpreting Title VII for guidance in assessing state-law claims for sexual harassment in the form of a hostile work environment.  See <u>Ocana v. Am. Furniture Co.</u>, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91

P.3d 58.  Under this framework, as employed by the state courts, Plaintiff has not made an adequate showing on each essential element necessary to establish a *prima facie* case of sexual harassment in the form of a hostile work environment for the reasons stated above. In particular, the speech and behavior at issue here did not occur with the same frequency alleged in Ocana, 2004-NMSC-018, ¶ 25, nor did it rise to a comparable level of severity. Unlike Ocana, the hostile or offensive conduct at issue in the present case did not take the form of repeated attempts to initiate a sexual encounter or other behavior that would support a claim for assault, battery, or intentional infliction of emotional distress.  For all of the above reasons, Defendant is entitled to summary judgment on Plaintiff's state-law claims as well.

## III.   **CONCLUSION**

Employing the burden-shifting framework of Fed. R. Civ. P.56 as articulated in Celotex Corp., 477 U.S. at 322-23, and Adler, 144 F.3d at 670-71, I conclude that Defendant is entitled to summary judgment as a matter of law on each of Plaintiff's claims.  In light of this conclusion, the motion to strike Plaintiff's claims for emotional and mental distress is rendered moot.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. No. 15] is **GRANTED**.

**IT IS FURTHER ORDERED** that *Defendant's Motion to Strike Claims for Damages for Emotional and Mental Distress as a Result of Plaintiff's Failure to Comply with D.N.M.LR-Civ. 26.3(d)* [Doc. No. 12] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 21st day of December, 2004, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

21